IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TOM TUDUJ #M05570 )       Civil Rights Complaint
     Plaintiff )       42 U.S.C. § 1983

VS.

Eric M. Johnson M.D., )       JURY TRIAL DEMANDED
Christine Locchead M.D.,
Sam Nowabasi M.D.
John L. Trost M.D.
Dr. Ritz and Colligial;     17-219-NJR
Jackie Martella,
Todd Brooks, )       Case No _____
Kimberly Butler, in
her capacity as Warden
of the Menard Correctional Center
John R. Baldwin, in
his capacity as Director
of the Illinois Department
of Illinois
     Defendants )

Introduction

   This is a civil rights action filed by Tom Tuduj,
pro-se, a state prisoner for damages under

1

42 U.S.C. § 1983, alleging denial of medical care and deliberate indifference to a serious medical need in violation of the Eighth Amendment of the United States Constitution.

## Jurisdiction

The Court has jurisdiction over plaintiff's claims of violation of Federal Constitutional Rights under 42 U.S.C. §§ 1331 (1) and 1343 and 28 U.S.C. § 1391

## Parties

1) The Plaintiff, Tom Tudoj, is incarcerated at Menard Correctional Center ("Menard") during the relevant events delineated in this Complaint.

2) Defendants Eric M. Johnson and Christine Locchead were the optometrists at Menard Employed by Wexford Health Source Inc., and were responsible for ensuring medical care provision relating to opthalmology or eye care. Johnson and Locchead are no longer employed at Menard. They are sued in their individual capacity (Not Government Employees)

2

3) Defendant Sam Nowabasi M.D. (who is no longer employed at Menard) was the Primary Physician responsible for ensuring provision of Medical Care to prisoners at Menard. He is sued in his individual capacity (Not Government Employees)

4) Defendant John L. Trost is the Medical Director at Menard and is generally responsible for ensuring provision of medical to prisoners and supervises the named defendants. He is sued in his individual capacity. (Not Government Employee)

5) Defendants Todd Brooks was Asst Warden, and Kimberly Butler was Warden at Menard (who is no longer employed at Menard) were responsible for the safety, wellbeing and welfare of prisoners at Menard. They are sued in their official capacities. (Employed by Government)

6) Defendant Jackie Martella of the Boswell Pharmacy provides prescribed medication to prisoners at Menard. She is the Chief Executive Officer of Boswell Pharmacy. She is sued in her individual capacity.  .. (Not Government Employee)

7) Defendant John R. Baldwin, is the Director of the Illinois Department of Corrections who is responsible for establishing, monitoring, and enforcing operations, policies and practices of the Illinois state prison system, which includes the provision of constitutionally adequate medical care for all prisoners committed to the custody of the Illinois Department of Corrections. He is sued in his official capacity. (Employed by Government)

8) Defendant Dr. Ritz is a member of the colligial who refused and denied plaintiffs sunglasses, which was concurred by Dr. Trost on 11-16-15. He and any other member of the colligial are sued in their individual capacity. (Not Government Employee)

9) All the above named defendants, at all relevant times herein acted under color of law. All the above named Doctors are employed by Wexford Health Sarce Inc. All the civil rights violations occured in Randolph County, Illinois. Plaintiff has exhausted all his Administrative Remedies.

10) Plaintiff has been incarcerated in Menard since June 2009 and is entirely dependant upon IDOC and its agent or employees for his medical care.

4

11) On 1-30-07 while plaintiff was in Cook County Jail he was prescribed sun glasses, which were confiscated at Northern Receiving Center (NRC) in Stateville. Upon arriving at Menard plaintiff was continually denied any form of sunglasses or prescribed transition lenses by Dr. Eric M. Johnson from June 2009 to February 7, 2012.

12) Plaintiff's daily and weekly pain precluded him from giving up his efforts in obtaining relief from the severe and excruciating pain to his eyes from lights and sun light. On February 7, 2012 Dr. Eric M. Johnson finally relented, after he visited plaintiff's cell mate or neighbor in cell 222, and plaintiff showed Dr. Johnson how he can barely see whats on the TV, because he has to turn down the contrast and brightness on his TV, which causes plaintiff pain in his eyes and brain from the TV light. Plaintiff had no idea that Dr. Johnson was going to visit the cell house.

13) It took plaintiff over 2 yrs to obtain a permit and transition lenses, which turned out to be defective as they would barley transition one shade making them completely useless, even after

5

plaintiff showed the prescription from Cook County Jail dated January 30, 2007.

14) On March 27, 2012 Dr. Johnson ordered the transition lenses, however the lenses did not transition. Dr. Johnson inspected the glasses and stated that "this is the best he can do, it is as dark as they make them". The lenses barely transition one shade. Plaintiff witnessed other inmates with completely dark transition lenses, which prompted plaintiff to continue his efforts in seeking adequate eye protection.

15) On December 31, 2014 Dr. Christine J. Lochead's medical notes indicated that the eye doctor, does not see the need for dark glasses, whereby she repeatedly refused to prescribe defect free/or dark transition lenses, issue permit renewal, or offer a resolution to plaintiff's eye pain.

16) Plaintiff consistently reported to all eye doctors that he is suffering from excruciating/severe pain to where if he did not need his eyes to prove his actual innocence, he would tear his own eyes out with his hands to stop the pain.

6

17) Plaintiff's pain and virus/infection is visible on his face, where his skin is red and inflamed around his mouth and eyes, as well as his cranium, which should have resolved any concerns by these doctors of malingering for some perceived privelage of wearing sunglasses in a penitantiary, where there is a continual fear that everyone will want sunglasses. Additionally, Plaintiff has spent $100's of dollars over the past 9 years on medical co-pays for this chronic condition and he paid $50.99 for the defective transition lenses.

18) Both Dr. Eric M. Johnson and Dr. Christine Lochhead failed in their constitutional duties to treat plaintiff by: 1) Dr. Johnson failed to order appropriate replacement lenses in a timely manner, as well as the original order which took over 2 yrs, or offer a diagnosis based on medical records from Cook County Jail and here at Menard, which indicated the prescription for Doxycylene and Acyclovair on February 2, 2011 by Dr. Fuentes, which should have substantiated that a virus/infection was present. He also failed to offer a remedy constituting deliberate indifference.

7

19) Dr. Christine Lochhead failed to issue transition permit renewal, order defect free/darker transition lenses, consult with primary physician or check medical records, which evince prescriptions for Doxycyleve and Acyclovair on February 2, 2011 by Dr. Fuentes substantiating that a virus/infection was present. She also failed to diagnose or offer remedy constituting deliberate indifference.

20) On July 2, 2015 plaintiff was seen by Dr. Kehoe, who ordered the transition lense replacement, received by plaintiff on August 26, 2015. However, they were also defective or ordered incorrectly. There are inmates at Menard that have completely 100% dark transition lenses or sunglasses. Eventually Dr. Keho provided plaintiff with post operative tinted glasses in April of 2016. It took almost 7 yrs to receive adequate eye protection to plaintiff's serious medical need constituting deliberate indifference. He is not sued.

21) Defendants Asst Warden Todd Brooks, Warden Kimberly Buetter and Director John Baldwin concurred with the medical staff assessments deferring to their medical judgements.

8

22) Since plaintiff's incarceration of May 17, 2006, he has suffered severe eye pain, and migraine headaches, which all stem from the same virus/infection.

23) On several occasions, when seeking treatment defendants have failed to adequately diagnose and provide effective treatment for his eyes and systemic virus/infection, leaving plaintiff to research his own medical problem.

24) Upon information or belief the epidemiology of this virus/infection stems from two possibilities. The first one is from a child vaccine given to plaintiff with a strain of the chickenpox for alegedly conferring immunity, which evolves to herpes simplex leading to conjunctiva or cornea of the eye, and the brain may be infected, causing enciphalitis or meningitis, as well as inflamation of the liver, which all may be fatal.

25) The secondary mode of infection is a side effect contained in Ambren CR (zolpidem) called herpes zoster, which eventually evolves to the shingles.

26) In either case plaintiff was eventually prescribed Doxycylene and Acyclovair on 2-10-11 by Dr. Fuentes which was ineffective, and subsequently on 9-19-14

9

Dr. Fuentes prescribed DMSO (dimethyl sulfoxide), which eliminates this virus/infection that invades the ganglia of the nerves, particularly the spinal nerves of the chest, and the fifth cranial nerve which supplies the face. Dr. Fuentes is not sued in this complaint.

27) Dr. Nowabasi failed to adequately and timely diagnose and treat plaintiff from the first visit, as well as prior to 2-10-11 and thereafter, untill he prescribed Hydrogen Peroxide on 6-15-14, which was subsequently denied by Security. No other treatment was offered by Dr. Nowabasi for over 5 yrs, he failed to refer plaintiff to infectious disease specialist.

28) The prescribed DMSO was not filled by Boswell Pharmacy due to it not being on their formulary, Boswell Pharmacy is owned by Jackie Martella (CEO) and Cathleen Martella (CFO), thereby interfering with prescribed treatment, and failed to carry out treatment prescribed by plaintiff's doctor.

29) On 11-27-16 plaintiff visited with Dr. Caldwell, where plaintiff asked if DMSO can be ordered off formulary. Dr. Caldwell's response was that Dr. Fuentes was apparently an Eye Doctor

10

so that is why she was able to prescribe DMSO,
however he would "not get away with it."
Plaintiff explained that this virus is systemic and
is in his sacral illiac lower spine region as well.
Dr. Coldwell failed to perform a physical
examination, stating he would refer this plaintiff
to Dr. Trost, who never called plaintiff as
of 2-24-17 to provide other diagnostic testing
requested by this plaintiff (ie: blood test, parasite test, pH level)

30) Plaintiff met with Dr. Trost (Medical Director)
numerous times, who along with Dr. Ritz
(a member of the colligial) concurred that
DMSO will not be provided to plaintiff. No
other treatment was offered despite text in
Grievance responses that other treatment would
be offered, or discussed, he failed to refer to infectious disease
specialist.

31.) DMSO (dimethyl sulfoxide) is a colorless,
nontoxic, water-soluble liquid derived from wood
pulp. DMSO increases the pH level, and therefore
the overall pH of the cells. The virus/infection exists
in cells within our bodies and cannot exist in an
elevated oxygen environment. It has been approved
by the FDA for interstitial cystitis, oral form,
Rimso-50 is available, any licensed physician

11

has the right to use DMSO for any and all ailments if he or she feels it will benefit the patient. Over 900 million people worldwide have used DMSO. It is approved for use in 125 countries.

32] Plaintiff also learned about another treatment option called O$_2$Xygen Force (stabilized liquid oxygen, or SLO) but has not been able to discuss this with Dr. Trost, who has yet to call plaintiff for alternate treatment.

33) This virus/infection lies in the trigeminal ganglion, located at the top of the spine, and/or in the nerve roots located at the base of the spine in the sacral ganglion. It is triggered by excessive heat or cold temperature, which plaintiff is continually exposed to, where tempeture ranges from 120° to 10° when the heaters were broken in 2015 all year, as well as stress, which plaintiff is constantly under as an actually innocent and wrongfully convicted man, and all the conditions of confinement, which hurts twice as much as an innocent man, than it does as a guilty man.

COUNT I

Deliberate Indifference to a Serious Medical Need
against. Defendants Johnson, Locchead,
Nowabasi, Trost, Ritz and colligial, and Martella

COMES NOW plaintiff Tom Tudy, and for
Count I of his Complaint against defendants,
Eric M. Johnson M.D., Christine Locchead M.D.
Sam Nowabasi M.D., John L. Trost M.D.
Dr. Ritz and Colligial, and Martella, states:

34) Plaintiff hereby repleads and incorporates by
reference the allegations set forth in paragraphs
1 through 33 as if the same were herein fully set forth.

35) Plaintiff had a serious medical need in the
form of severe and excrutiating headaches, eye
pain and systemic virus/infection, which he
continues to experience resulting therefrom.

36) Defendants, Johnson, Locchead,
Nowabasi, Trost, Martella, and Ritz with
Colligial were deliberately indifferent to
plaintiff's serious medical need by failing to
timely diagnose and order post operative tinted
glasses or offer remedy, Caldwell, Nowabasi, Martella,
and Trost failed to provide prescribed DMSO, and Ritz,

13

as well as offer alternative effective treatment, or refer plaintiff to infectious disease specialist.

37)    Because of defendants collective delliberate indifference plaintiff has endured un-necessary severe infliction of pain for almost 8 yrs and continues to suffer same to the present day, due to defendants continued refusal to provide effective treatment, with the exception of the tinted glasses that were provided after almost 7 yrs of severe pain from light and sun light. Plaintiff was forced to take 1000's of ibuprofens in that time frame, which has been linked to liver cancer, and heart attack, which plaintiff has experienced numerous transient ischemic strokes, thereby creating conditions to further harm plaintiff. Plaintiff's severe pain continues as he writes this complaint

38)    At all times relevant herein, all named defendants in paragraph 36 acted under color of law, and were aware of plaintiff's medical problems.

WHEREFORE, for these reasons, plaintiff respectfully prays this Court to enter judgement in his favor against Defendants Johnson, Locchead, Nowabasi, Trost, Martella, Ritz and collegial in an amount in excess of $75,000.00; to award plaintiff his costs and for such relief as this Court deems just.

14

# COUNT II

Declaratory and Injunctive Relief Against Defendants
Baldwin, Butler or current Warden and Brooks

COMES NOW plaintiff Tom Tudy and for
Count I and II of his Complaint against defendants
John R. Baldwin, Kimberly Butler or current
Warden and Todd Brooks, states.

39)   Plaintiff hereby repleads and incorporates by
reference the allegations set forth in paragraphs
1 through 38 as if same were herein fully set forth.

40)   Defendants Baldwin, Butler and Brooks have
a departmental or facility policy and practice
of failing to provide medically necessary treatment,
and are deliberately indifferent to the fact that
the systemic failure to do so results in injury and
substantial risk of serious harm to prisoners.

41)   Plaintiff, like other prisoners, have been
denied effective treatment for the aforementioned
virus/infection, and have and continue to suffer
significant pain, and other harm.

42)   The primary medical service provided by
Defendants Baldwin, Butler and Brooks is to routinely

15

and systemically concur and defer to medical staff's decision without any investigation into the matter.

43) By their policies and procedures, Defendants Baldwin, Butler and Brooks subject plaintiff, and other prisoners to a substantial risk of serious harm and injury from inadequate medical care.

44) These policies and practices have been and continue to be implemented by Defendants Baldwin, Butler or Current Warden, Brooks and their agents, officials, employees, and all persons acting in concert with them under color of state law, in their official capacities, and are the proximate cause of the plaintiff's ongoing depravation of rights secured by the United States Constitution under the Eighth Amendment.

45) Defendants Baldwin, Butler and Brooks have been and are aware of all the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

16

46)  Plaintiff has no adequate remedy at law to redress the wrong committed by Defendants Baldwin, Butler and Brooks. Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies and practices of Defendants Baldwin, Butler or Current Warden and Brooks as alleged herein unless plaintiff is granted the relief requested. The need for relief is critical because the rights at issue are paramount under the United States Constitution and the laws of the United States.

WHEREFORE, for these reasons, plaintiff respectfully prays this Court to enter judgement in his favor granting him the following relief:

A.  Adjudge and declare that the acts, omissions, policies and practices of Defendants Baldwin, Butler and Brooks and their agents, employees, officials, and all persons acting in concert with them under color of state law or otherwise, delineated herein are in violation of the rights of this prisoner plaintiff under the Cruel and Unusual Punishment Clause of the

17

Eighth Amendment of the United States
Constitution;

B. Preliminarily and permanently enjoin
Defendants Baldwin, Butler or Current
Warden and Brooks and their agents,
employees, officials, and all persons
acting in concert with them under
color of state law or otherwise, from
subjecting this prisoner Plaintiff to the
illegal and unconstitutional conditions,
acts, omissions, policies and practices
set forth above;

C. Order Defendants Baldwin, Butler or
Current Warden, Brooks and their agents
employees, officials and all persons
acting in concert with them under color
of state law or otherwise, to develop
and implement, as soon as practical,
a plan to eliminate the substantial risk
of serious harm to this Prisoner Plaintiff,
and other prisoners, who suffer due to
Defendants' inadequate medical care relating
to same virus/infection, including at minimun
the following:

18

1) policies and practices that provide timely diagnosis, and treatment of the aforementioned virus/infection that is effective, and costs taxpayers less money than the current ineffective, and expensive treatment.

2) policies and practices that reliably screen for these virus/infections that need treatment for other prisoners.

3) create and implement a Medical Quality Assurance Committe to ensure prisoners are receiving medical treatment consistent with their Constitutional Rights, which includes a representative from the inmate population to speak for the unspoken, who either lack the requisite knowledge or resources to fight for their rights.

4) staffing sufficient to provide plaintiff and other prisoners with timely diagnosis, and treatment by qualified, and competent clinicians who can provide routine, urgent, emergent medical care of this virus/infection.

19

which includes treatment off formulary.

5) refer plaintiff to an infectious disease specialist, where diagnostic testing may be performed (ie: blood testing, parasitic testing, PH level testing etc...) to properly diagnose and treat patient for the aforementioned virus/infection and other secondary or medical condition.

D. Award plaintiff his costs;

E. Award plaintiff such further relief as this Court deem just

Dated: 1-12-17          Respectfully submitted,

By: Tom Tuduj

TOM TUDUJ - M05570
Plaintiff Pro-Se
Menard Corrections Center
PO Box 1000
Menard, IL 62259

20

STATE OF ILLINOIS )
) SS
COUNTY OF _Bandolph_ )

## AFFIDAVIT

I, _Tom Tudoj_ being first duly sworn upon my
oath depose and state that the following matters are both true and
correct made upon personal knowledge and belief, and if called as a
witness, I am competent to testify thereto: _____

_That all the information contained herein_
_is true and accurate to the best of my knowledge_

_Declaration under Federal Rule of Civil Procedure 11_

_I certify to the best of my knowledge, information, and_
_belief, that this complaint is in full compliance with_
_Rule 11 (a) and (b) of the Federal Rule of Civil Procedure._
_The undersigned also recognizes that failure to comply_
_with Rule 11 may result in sanctions._

Subscribed and sworn to
before me on the 21st day
of _September_ , _2016_.

_Mliane W.A_
NOTARY PUBLIC

Respectfully submitted,

_Tom Pudej_

OFFICIAL SEAL
SHANE W. GREGSON
Notary Public - State of Illinois
My Commission Expires 2/25/2019

21