## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TOM TUDUJ, ) | |
| #MO5570, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case No. 17-cv-00219-NJR |
| vs. ) | |
| ) | |
| ERIC M. JOHNSON, ) | |
| DR. CHRISTINE LOCCHEAD, ) | |
| SAM NOWABASI, ) | |
| DR. JOHN L. TROST, ) | |
| DR. RITZ, ) | |
| COLLIGIAL, ) | |
| JACKIE MARTELLA, ) | |
| TODD BROOKS, ) | |
| KIMBERLY BUTLER, and ) | |
| JOHN R. BALDWIN, ) | |
| ) | |
| **Defendants.** ) | |

## **MEMORANDUM AND ORDER**

**ROSENSTENGEL, District Judge:**

Plaintiff Tom Tuduj, currently incarcerated in Menard Correctional Center ("Menard"), brings this *pro se* action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. According to the Complaint, Defendants have been deliberately indifferent to Plaintiff's serious medical condition. Specifically, Plaintiff contends he suffers from a systemic virus or infection that has damaged his eyes, necessitating the use of dark eyeglasses (transition lenses). He further alleges that the virus or infection requires treatment and/or referral to a specialist.

In connection with his claims, Plaintiff names Eric M. Johnson (Optometrist), Christine Locchead (Optometrist), Sam Nowabasi (Physician), Dr. John L. Trost (Physician and Menard Medical Director), Dr. Ritz (Physician), Jackie Martella (CEO of Boswell Pharmacy, a private

1

entity contracted to provide prescription medicine), Todd Brooks (Assistant Warden of Menard at the time of the alleged violations), Kimberly Butler (Warden of Menard at the time of the alleged violations), John R. Baldwin (Director of IDOC), and "Colligial" (not identified as a Defendant in the body of the Complaint). Brooks, Butler, and Baldwin are sued in their official capacities only. The other Defendants are sued in their individual capacities only.

Plaintiff seeks monetary damages, as well as declaratory and injunctive relief. Plaintiff's request for injunctive relief includes, among other things, a request to order Defendants to have him treated by an infectious disease specialist. The Court construes Plaintiff's request for injunctive relief as including a Motion for Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65(a), as well as a general prayer for injunctive relief.

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

### The Complaint

According to the Complaint, Plaintiff suffers from a systemic virus or infection. (Doc. 1, p. 9). The virus or infection has damaged Plaintiff's eyes, causing excruciating eye pain and sensitivity to light. (Doc. 1, pp. 6-7). Aside from Plaintiff's reported eye pain and sensitivity to light, Plaintiff contends it is evident that he is suffering from a virus or infection because the skin on his face and cranium is red and inflamed. (Doc. 1, p. 7). Plaintiff has exhibited one or more of these symptoms since January 2007 to the present. (Doc. 1, pp. 7-12).

In February 2011, Dr. Fuentes, an ophthalmologist,[1] prescribed Doxycycline and Acyclovir. (Doc. 1, pp. 7-9). Although not expressly alleged, apparently this was in an effort to treat the infection and/or virus causing Plaintiff's eye pain and related symptoms. *Id.* The prescribed treatment was not effective. (Doc. 1, p. 9). On September 19, 2014, Dr. Fuentes prescribed DMSO (Dimethyl Sulfoxide) as a treatment for Plaintiff's symptoms. (Doc. 1, p. 9). According to the Complaint, Boswell pharmacy is the entity responsible for providing prescribed medication to prisoners at Menard. (Doc. 1, p. 3). DMSO is not part of Boswell's formulary. (Doc. 1, p. 10). Accordingly, Boswell did not fill Plaintiff's prescription for DMSO.

---

[1] Dr. Fuentes is not a Defendant in this action.

Plaintiff contends that he has met with Trost "numerous times" and requested treatment for his condition. (Doc. 1, p. 11). Specifically, Plaintiff has asked that he receive his prescription for DMSO. (Doc. 1, p. 11). Trost has refused to assist Plaintiff in obtaining DMSO, has not provided any alternative treatment, and has failed to refer Plaintiff to an infectious disease specialist. (Doc. 1, p. 11). Additionally, both Ritz and Trost participated in a collegial review that resulted in denying Plaintiff's request for treatment. (Doc. 1, p. 11).

Plaintiff also met with Caldwell regarding his condition on November 27, 2016. (Doc. 1, p. 10). Plaintiff indicated he was suffering from a systemic virus or infection that required treatment. (Doc. 1, p. 11). Plaintiff requested a prescription for DMSO. (Doc. 1, p. 10). Caldwell refused to provide the requested prescription. (Doc. 1, p. 10). Caldwell indicated he could not "get away with" prescribing DMSO because, unlike Dr. Fuentes, he is not an ophthalmologist. (Doc. 1, p. 10). Caldwell did not conduct a physical examination of Plaintiff and apparently did not provide a course of treatment. (Doc. 1, pp. 10-11). Caldwell indicated he would refer Plaintiff to Trost, however, Plaintiff has yet to receive any such referral. (Doc. 1, p. 11).

Plaintiff has had several visits with Nowabasi. (Doc. 1, p. 10). These visits occurred between 2011 and 2014. (Doc. 1, p. 10). Other than prescribing hydrogen peroxide in 2014 (which was subsequently confiscated by a guard), Nowabasi took no action with regard to Plaintiff's condition. (Doc. 1, p. 10). Additionally, Nowabasi failed to refer Plaintiff to an infectious disease specialist. (Doc. 1, p. 10).

Plaintiff also contends that in January 2007 (prior to arriving at Menard) he received a prescription for transition lenses (due to his sensitivity to light, presumably caused by the virus or infection). (Doc. 1, p. 5). Unfortunately, however, Plaintiff's prescription glasses were subsequently confiscated. (Doc. 1, p. 5). After that, between June 2009 and April 2016,

Plaintiff's requests for transition lenses were denied, delayed, and/or he received a prescription for ineffective transition lenses. (Doc. 1, pp. 5-8). Specifically, Plaintiff contends that Johnson and Locchead failed to order Plaintiff appropriate replacement lenses and/or delayed his access to appropriate replacement lenses. (Doc. 1, pp. 7-8). This caused Plaintiff to experience unnecessary pain and suffering. (Doc. 1, pp. 5-8). Plaintiff did not receive adequate transition lenses until April 2016 when he was seen by Dr. Kehoe.[2] (Doc. 1, p. 8).

Plaintiff contends Baldwin, Butler, and Brooks "have a departmental or facility policy and practice of failing to provide medically necessary treatment and are deliberately indifferent to the fact that the systemic failure to do so results in injury and substantial risk of serious harm to prisoners." (Doc. 1, p. 15).

The allegations in Plaintiff's Complaint reference alleged constitutional violations beginning in 2009 that continue through today, at least with respect to Plaintiff's alleged systemic infection and related symptoms affecting his eye. (Doc. 1, pp. 5-20).

## Discussion

Based on the allegations of the Complaint and Plaintiff's articulation of his claims, the Court finds it convenient to divide the *pro se* action into a single count. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.

> **COUNT 1 –** Defendants responded to Plaintiff's serious medical need (systemic infection and related symptoms affecting the eye) with deliberate indifference, in violation of the Eighth Amendment.

---

[2] Dr. Kehoe is not a Defendant in this action.

*Statute of Limitations*

Although Plaintiff complains of conduct beginning as early as 2009, the Court cannot, at this stage of the litigation, conclude that Plaintiff's claims are barred by the applicable statute of limitations. Read liberally, Plaintiff has alleged an ongoing injury that will continue as long as Defendants fail to provide the needed treatment. As such, the Court declines to dismiss Plaintiff's claims as time barred at the screening stage. *See Devbrow v. Kalu*, 705 F.3d 765 (7th Cir. 2013).

*Substantive Analysis*

The Eighth Amendment of the United States Constitution bars the cruel and unusual punishment of prisoners, and prison officials violate this proscription "when they display deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005). To bring an Eighth Amendment claim against a physician, a prisoner has two hurdles to clear: he must first show that his medical condition is "objectively" serious, and he must then allege that the medical professional acted with the requisite state of mind. *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002).

For screening purposes, Plaintiff has alleged the existence of an objectively serious medical condition. An objectively serious condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Factors that indicate a serious condition include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir.

1997). Here, Plaintiff's ongoing pain, sensitivity to light, and facial inflammation qualify as serious, at least at this preliminary stage.

Plaintiff's Complaint also sufficiently alleges, at the screening stage, that Johnson, Locchead, Nowabasi, Trost, and Ritz acted with deliberate indifference. To be sure, "medical malpractice, negligence, or even gross negligence" by a physician "does not equate to deliberate indifference." *Johnson v. Doughty*, 433 F.3d 1001, 1012-13 (7th Cir. 2006). Because deliberate indifference is such a demanding state of mind requirement, there is no constitutional violation merely because a physician's treatments ultimately prove ineffective, *Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008), nor is there a constitutional violation solely because a doctor refuses to give a prisoner the exact treatment he wishes, *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). That said, deliberate indifference can exist if a professional's decision represents "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). It also can exist when an official fails to provide any treatment for a medical condition, *Gayton v. McCoy*, 593 F.3d 610, 623-24 (7th Cir. 2010), when an official persists with ineffective treatment for a medical problem, *Greeno*, 414 F.3d at 655, or when an official delays medical treatment or needlessly prolongs a prisoner's pain, *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012).

While Plaintiff's Complaint is sometimes light on specifics and at times confusing, when the complaint is construed liberally and all inferences are drawn in Plaintiff's favor, Plaintiff alleges that Johnson, Locchead, Nowabasi, Trost, and Ritz interfered with or delayed a prescribed course of treatment, pressed forward with ineffective treatment, failed to offer treatment, and/or failed to consider referring Plaintiff to a specialist. These allegations are just

enough to give Johnson, Locchead, Nowabasi, Trost, and Ritz notice of Plaintiff's claim and to state a claim for deliberate indifference against these Defendants. Accordingly, Count 1 will proceed as to Locchead, Nowabasi, Trost, and Ritz.

But Count 1 shall not proceed as to Martella. The Complaint alleges that Boswell Pharmacy failed to fill one of Plaintiff's prescriptions for a non-formulary item, that Martella is the CEO of Boswell Pharmacy, and that she is therefore liable for interfering with a prescribed course of treatment. These allegations are insufficient to state a claim as to Martella because there is no indication that Martella was personally involved in the alleged constitutional deprivations. *See Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus liability does not attach unless the individual defendant caused or participated in a constitutional violation."). Accordingly, Count 1 shall be dismissed without prejudice as to Martella.[3]

The Court next addresses the viability of Count 1 with respect to Brooks (formerly the Assistant Warden of Menard), Butler (formerly the Warden of Menard), and Baldwin (Director of IDOC). Plaintiff contends he sues these three Defendants in their official capacities only. Nonetheless, the Court considers the viability of both official capacity and individual capacity claims as to these Defendants.

---

[3] To reach this finding, the Court need not address the issue of whether Boswell Pharmacy is a state actor for purposes of § 1983. *See Shields v. Illinois Dep't of Corr.,* 746 F.3d 782, 797 (7th Cir. 2014). *See also Boyce v. Martella*, 2014 WL 5766112 (N.D. Ill. Nov. 4, 2014) (discussing Boswell Pharmacy and status as a state actor for purposes of § 1983). The body of the Complaint also references Cathleen Martella, allegedly the CFO of Boswell Pharmacy. Cathleen Martella, however, is not identified as a Defendant in the caption or in Plaintiff's list of Defendants. As such, she is not considered a Defendant by the Court. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption"); *Id*. at 553 ("[It is] unacceptable for a court to add litigants on its own motion. Selecting defendants is a task for the plaintiff, not the judge.").

To the extent that Plaintiff is seeking money damages, the official capacity claims fail as to these Defendants. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989); *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001).

To the extent that Plaintiff is seeking money damages against these Defendants in their individual capacities, the claim also fails. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir.2005) (citations omitted). The doctrine of *respondeat superior*, under which a supervisor may be held liable for a subordinate's actions, does not apply to actions filed under Section 1983. *See, e.g., Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008); *Chavez v. Illinois State Police*, 251 F.3d 612, 651. Although the doctrine of *respondeat superior* is not applicable, "[s]upervisory liability will be found ... if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it." *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir.1997); *Chavez*, 251 F.3d at 651. Allegations that an agency's senior officials were personally responsible for creating the policies, practices, or customs that caused the constitutional deprivations suffice to demonstrate personal involvement. *See also Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 615 (7th Cir. 2002).

Plaintiff does not allege that these Defendants were personally involved in the alleged constitutional violations. Further, each Defendant's supervisory position, standing alone, supports no finding of personal involvement. Finally, Plaintiff's bald assertion that Baldwin, Butler, and Brooks "have a departmental or facility policy and practice of failing to provide medically necessary treatments" (and similar generic claims) fails to satisfy basic pleading

standards. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); FED. R. CIV. P. 8. Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. The allegations regarding the policies, customs, or practice are threadbare and do not suggest that any policy, custom, or practice traceable to these Defendants deprived Plaintiff of a protected right. As such, the Count 1 shall be dismissed without prejudice as to these Defendants.

The Court notes that Plaintiff is seeking injunctive relief with regard to Count 1. The warden is the appropriate party for injunctive relief in a case alleging deliberate indifference to serious medical needs. *Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Accordingly, the Clerk will be directed to add Jacqueline Lashbrook, the warden of Menard, in her official capacity, for purposes of carrying out any injunctive relief that is ordered.

Finally, the Court shall direct the Clerk to dismiss "Colligial" as a Defendant. The caption of Plaintiff's Complaint named "Dr. Ritz and Colligial" as a Defendant. (Doc. 1, p. 1). The Clerk listed "Colligial" as a separate Defendant. A review of the Complaint reveals that "Colligial" is not a person or entity that Plaintiff intended to sue. Rather, Ritz's denial of Plaintiff's request for treatment was part of a *collegial* review conducted by Ritz and Trost. (Doc. 1, p. 10). Accordingly, Colligial shall be dismissed from the action.

### Pending Motions

Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* (Doc. 2) shall be addressed in a separate Order of this Court. For purposes of determining how service of process shall proceed, however, the Court observes that Plaintiff appears to qualify for pauper status. Accordingly,

service of summons and the Complaint will be effected at government expense. *See* 28 U.S.C. § 1915(d).

In addition, based on the allegations in the Complaint and Plaintiff's requested relief, the Clerk shall be directed to add a Motion for Preliminary Injunction as a separate docket entry in CM/ECF. This motion shall be **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for prompt disposition.

### Disposition

The **Clerk** is **DIRECTED** to **ADD** a **Motion** for **Preliminary Injunction** as a separate docket entry in CM/ECF. This motion is hereby **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for prompt disposition.

The **Clerk** is **DIRECTED** to **TERMINATE** the following Defendants as parties in CM/ECF: **COLLIGIAL, MARTELLA, BROOKS, BUTLER,** and **BALDWIN**.

The **Clerk** is **DIRECTED** to add **JACQUELINE LASHBROOK**, the warden of Menard, in her official capacity, for purposes of carrying out any injunctive relief that is ordered.

**IT IS HEREBY ORDERED** that **COUNT 1** shall receive further review as to **JOHNSON, LOCCHEAD, NOWABASI, TROST,** and **RITZ**. **COUNT 1** is **DISMISSED** without prejudice as to **COLLIGIAL, MARTELLA, BROOKS, BUTLER,** and **BALDWIN**.

With respect to **COUNT 1**, the Clerk of the Court shall prepare for Defendants **JOHNSON, LOCCHEAD, NOWABASI, TROST, RITZ,** and **LASHBROOK:** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to

11

the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Donald G. Wilkerson** for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to **United States Magistrate Judge Wilkerson** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral*.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact

that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 8, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**